```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| Ifeoma Ezekwo,<br><br>　　　　*Plaintiff*,<br><br>　v.<br><br>Fay Servicing, LLC et al.,<br><br>　　　　*Defendants*. | No. 23-cv-00379 (MEF)(JRA)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   Background
II.  Legal Principles
III. "Valid, Final, and On the Merits"
IV.  Identity of Parties
V.   Same Transaction or Occurrence
VI.  Conclusion

\* \* \*

In a New Jersey state court, a bank sued to foreclose on certain property. Eventually, the bank got a foreclosure judgment against the property owners.

Here in federal court, one of the property owners sued the bank and others, mainly to try to prevent foreclosure.

The federal defendants now move to dismiss, arguing that this case cannot go forward because of the state case.

The motion is granted in part and denied in part.

\* \* \*

**I.   Background**

There are two relevant cases here.

The first is a state court case.

In 2023, a bank[1] filed a foreclosure action in a New Jersey state court.  See Complaint ("State Complaint"), US Bank Tr. Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. Feb. 16, 2023).

The suit named two property owners as defendants.[2]  See id.

In 2025, the state court entered a foreclosure judgment against the property owners.  See Foreclosure Uncontested Order for Final Default Judgment ("State Foreclosure Judgement"), US Bank Tr. Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. Mar. 28, 2025).

\* \* \*

The second relevant case is this one.

This federal lawsuit was filed by one of the two defendants in the state court foreclosure action.  She is called "the Plaintiff."[3]

The Plaintiff sued four entities.  They are collectively referred to as "the Defendants."[4]

One of the Defendants is the plaintiff from the state court foreclosure action.[5]

The Plaintiff's operative complaint in this case was filed in 2023.  See Third Amended Complaint ("Federal Complaint") (ECF 14).

It mainly sought to stop the state court foreclosure proceedings.  See, e.g., id. at 107–09.

---

[1]  U.S. Bank National Association.  It sued in its capacity as trustee for another entity, VRMTG Asset Trust.  See State Complaint at 1.

[2]  Ifeoma Ezekwo and Samuel Ezekwo.  See id.

[3]  Ifeoma Ezekwo.  See id.; Third Amended Complaint (ECF 14).

[4]  Fay Servicing, LLC; U.S. Bank Trust National Association in its individual capacity; U.S. Bank Trust National Association as owner trustee for VRMTG Asset Trust Mortgagee; and VRMTG Asset Trust Mortgagee.  See Federal Complaint at 1.

[5]  That Defendant, the former state court plaintiff, is U.S. Bank National Association, sued in its capacity as owner trustee for VRMTG Asset Trust.  See State Complaint at 1.

2

\*   \*   \*

The Defendants have moved to dismiss. See Motion to Dismiss (ECF 22).

They argue that the Plaintiff's claims are barred under the law of claim preclusion. See Brief on Behalf of Defendants in Support of Motion to Dismiss Plaintiff's Complaint with Prejudice ("Defendants' Brief") (ECF 22-1) at 2 n.2, 16–18.[6]

The motion is before the Court.[7]

## II.  Legal Principles

To decide whether a state court judgment cuts off the litigation before it, a federal court must look to the preclusion law of the state where the judgment was entered. See Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 375 (1985); Sec'y U.S. Dep't of Lab. v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017).

---

[6] The Defendants also make other arguments. For example, they argue that there is no subject-matter jurisdiction here. See Defendant's Brief at 11–15. Although "jurisdictional questions must generally be answered before any others[,] . . . a court is 'permitted to bypass the jurisdictional inquiry in favor of a non-merits dismissal on claim preclusion grounds.'" Howard v. Wells Fargo Bank, N.A., 733 F. Supp. 3d 352, 355 n.4 (D.N.J. 2024) (cleaned up) (quoting Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 277 (3d Cir. 2016)), aff'd 2024 WL 4890984 (3d Cir. Nov. 26, 2024). Because the Court dismisses the case against one of the Defendants, there is no need to reach the jurisdictional question as to that Defendant. Part VI discusses the jurisdictional question as to the other Defendants.

[7] The Plaintiff's complaint appears to relate to mortgages concerning two properties. One is located at "54–56 Central Avenue" in Englewood, New Jersey, and the other is located at 300 Windsor Road, also in Englewood, New Jersey. See Federal Complaint ¶¶ 14–15 (listing loan numbers for the two properties at issue); Defendant's Brief at 3, 8 (identifying the properties associated with the two loan numbers); cf. Second Amended Federal Complaint (ECF 11) ¶¶ 14–15 (listing the addresses identified in the Motion to Dismiss in lieu of loan numbers). This Opinion and Order is concerned solely with the first property. The Defendants' motion is granted in part and denied in part as to that property. The second property, at 300 Windsor, is discussed in Part VI.

Here, the Court looks to New Jersey law because that is where the relevant foreclosure judgment was entered. See State Foreclosure Judgment at 1.

Under New Jersey claim preclusion law, a state court action precludes a federal action when three conditions are met:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

McNeil v. Legis. Apportionment Comm'n of the State of N.J., 177 N.J. 364, 395 (2003) (cleaned up).

Take up each of these three requirements now.[8]

### III. "Valid, Final, and On the Merits"

First, was the New Jersey state court foreclosure judgment "valid, final, and on the merits?" Id.

\*   \*   \*

Start with "valid[ity]." Id.

As a general matter, a judgment is "valid," id., if the court that entered it had jurisdiction. See McKesson Corp. v. Hackensack Med. Imaging, 197 N.J. 262, 275 (2009); see also 18 James Wm. Moore et al., Moore's Federal Practice - Civil § 131.30[1][a]; cf. Lea

---

[8] In deciding motions to dismiss, courts are generally limited to considering the allegations contained in the complaint and the exhibits attached to it. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (1993). But the Plaintiff's federal-court complaint says little that is detailed about the state-court action, and her federal-court complaint does not attach any state-court filings. This said, a court handling Case 2 can also look to public judicial filings from Case 1, at least for the limited purpose, as here, of determining the claims that were made in Case 1 and when they were made. See id. (noting that courts may consider "matters of public record" in deciding a motion to dismiss); Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.").

4

v. Lea, 18 N.J. 1, 8 (1955); Hollander v. Hollander, 137 N.J. Eq. 70, 77 (1945).

That box is checked.

The state court that entered the foreclosure judgment was the Superior Court of New Jersey, Chancery Division. See State Foreclosure Judgment at 1.

That court had jurisdiction over the subject matter because in New Jersey the Chancery Division is empowered to handle foreclosure cases. See, e.g., U.S. ex rel U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 502-03 (2008) ("Because foreclosure proceedings seek primary or principal relief which is equitable in nature, a complaint in foreclosure is properly cognizable in the General Equity part of the Chancery Division."); 30 Myron C. Weinstein, N.J. Prac., Law of Mortgages § 28.5 (2d ed.) ("A foreclosure action seeking a sale of the mortgaged premises . . . should ordinarily be brought in the Chancery Division of the Superior Court of New Jersey.").

And the Chancery Division had jurisdiction over this particular foreclosure action because the relevant property is in New Jersey. See Last v. Audubon Park Assocs., 227 N.J. Super. 602, 606 (App. Div. 1988).

In short: the state foreclosure judgment here clears the "valid" bar.[9]

\*   \*   \*

Next: was the state judgment "final"? McNeil, 177 N.J. at 395.

A judgment is final if it is "not tentative, provisional, or contingent, and represents the completion of all steps in the adjudication of the claim by the [relevant] court." Restatement

---

[9] Sometimes, even a judgment entered by a court with jurisdiction can be "[in]valid," McNeil, 177 N.J. at 395, for preclusion purposes. The main example is when a judgment was void from the moment it was entered, see Moore's Federal Practice § 131.30[1][a]; Second Nat'l Bank of Phila. v. Thompson, 141 N.J. Eq. 188, 198 (Ch. 1947) --- perhaps because it was entered in violation of public policy. See, e.g., Schwartz v. Battifarano, 2 N.J. 478, 484 (1949) (holding that a judgment entered based on an illegal gambling transaction was "void" as contrary to public policy and therefore could not preclude another action). But no one argues that the bread-and-butter state foreclosure action here was at odds in some way with New Jersey public policy.

5

(2d) of Judgments § 13, cmt. b (1982); see also Moore's Federal Practice § 131.30[2][a].

Here, the state court judgment labeled itself "final." See State Foreclosure Judgment at 1.

And it plainly was that. The state court judgment was definitive. It did not purport to leave behind any meaningful loose ends. It was not just a step down the road; it marked the end of the case.

The state court judgment, in sum, was final.[10]

\*   \*   \*

The last question for now: was the "valid" and "final" state court foreclosure judgment also a determination "on the merits"? McNeil, 177 N.J. at 395.

The only possible argument that it was not on the merits is that it was entered on a default basis. But an argument along those lines does not work as a matter of New Jersey law. See Howard, 733 F. Supp. 3d at 356-58 (so holding), aff'd 2024 WL 4890984 (3d Cir. Nov. 26, 2024).

## IV. Identity of Parties

As set out just above in Part III, the foreclosure judgment here was "valid, final, and on the merits." McNeil, 177 N.J. at 395.

Move now to the second part of New Jersey's claim preclusion test: whether "the parties in the later action" (this case) are "identical to or in privity with those in the prior action" (the state foreclosure action). See id.

On one side of the ledger, the same-parties hurdle is easily cleared. This is because the federal-court Plaintiff was a defendant in the state action.

---

[10] It is true that the Plaintiff has continued to go back to the state court to ask it to undo its decision. See, e.g., Motion, US Bank Trust Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. June 15, 2025). But for preclusion purposes, post-judgment motions do not generally whittle away at finality. See Moore's Federal Practice § 131.30[2][c]; see also Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 426 (App. Div. 2011).

But what about the four federal-court Defendants?  Are they "identical to or in privity with [a party] in the prior [state court] action"?  Id.

Take this up federal-court Defendant by federal-court Defendant.

\* \* \*

The first Defendant here in federal court is "US Bank Trust National Association in its . . . capacity . . . as owner trustee for VRMTG Asset Trust Mortgagee."  Federal Complaint at 1 (cleaned up).

And in the state foreclosure action, that entity, "US Bank Trust National Association . . . solely as owner trustee for VRMTG Asset Trust," was the plaintiff.  State Complaint at 1 (cleaned up).

The parties are "identical."  McNeil, 177 N.J. at 395.

\* \* \*

But identity is not as simple as to the remaining three federal-court Defendants.

Start with VRMTG Asset Trust.

The Defendants assert that, in light of an earlier assignment, VRMTG now holds the mortgage that was at issue in the state court foreclosure action.  See Defendant's Brief at 8.  That would make VRMTG the mortgagee, and U.S. Bank, the plaintiff in the state court action, is said to be operating here as VRMTG's trustee.  See id. at 1.

The Defendants' argument seems to be that because the asserted trustee (U.S. Bank) can invoke New Jersey preclusion law, as noted just above, so too can its beneficiary (VRMTG) --- they are in privity with each other.  See id. at 2 n.2, 18.

But for now, this argument does not work.

Preclusion in the trustee-beneficiary context can be complex. See, e.g., Moore's Federal Practice § 131.40[3][e][v][A]; see also Kersh Lake Drainage Dist. v. Johnson, 309 U.S. 485, 491 (1940).

But the Defendants do not meaningfully discuss the law in this area.  See Defendant's Brief at 2 n.2, 18.

And as the moving party, the burden is theirs to carry.  See Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 158 (3d Cir. 2001); Smith v. Kershentsef, 843 F. App'x 447, 449 (3d Cir. 2021);

7

Papera v. Pa. Quarried Bluestone, 948 F.3d 607, 610 (3d Cir. 2020)).[11]

There is another VRMTG problem, too.

The necessary factual premise underlying the Defendants' preclusion argument is that there is a trustee-beneficiary relationship between U.S. Bank and VRMTG.

But the complaint here does not say anything meaningful about a trustee-beneficiary relationship between those parties.

And at the motion to dismiss stage, a court must generally stick to the allegations in the complaint. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (1993).

To be sure, some other sources are in bounds. Public judicial filings, for example. See footnote 8.

But while U.S. Bank's state-court complaint alludes to a relationship between U.S. Bank and VRMTG, see State Complaint ¶ 3.C (asserting that a prior mortgagee "assigned all its rights, title and interest in and to said Mortgage" to U.S. Bank in its trustee capacity), it is unlikely that the existence of a legal relationship can be treated as established based on that. See Lum, 361 F.3d at 221 n.3.

These are key issues --- legal, factual, evidentiary --- in deciding whether "the part[y] in th[is] . . . action,"[12] VRMTG, is "in privity with th[]e [party] in the [state court] . . . action,"[13] U.S. Bank.

---

[11] Moreover, in the trustee-beneficiary area, preclusion law often requires a look to whether the interests of the relevant entities are sufficiently well-aligned. Interests can be aligned, for example, by shared financial incentives. For example, where a trustee is acting as the "financial backstop" on a mortgage, Adam J. Levitin & Tara Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1, 59 (2011), then it might have roughly the same interest as the mortgagee in foreclosing on a delinquent mortgage. But there is nothing before the Court that speaks to whether there are any backstop arrangements here. Interests might also be aligned in other ways --- perhaps simply by virtue of the existence of legal duties that the trustee has to its beneficiary. But the Defendants do not address this.

[12] McNeil, 177 N.J. at 395.

[13] Id.

8

But the Defendants do not substantially address them.

\* \* \*

Same basic problem as to the next of the four federal-court Defendants, Fay Servicing LLC.

The Defendants say in their legal papers that Fay Servicing is the servicer for the relevant mortgage.[14]  See Defendant's Brief at 8.

Courts have suggested that mortgage servicers may be in privity with mortgagees and their trustees for the purposes of claim preclusion.  See, e.g., R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 186–87 (1st Cir. 2006); Berry v. Wells Fargo Bank, N.A., 865 F.3d 880, 883 (7th Cir. 2017); Proctor v. Wells Fargo Bank, N.A., 289 F. Supp. 3d 676, 682–83 (D. Md. 2018); Best v. Bank of Am., 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015).

And it may be that New Jersey law runs in roughly the same direction.  See D'Angelo v. Ocwen Loan Servicing, LLC, 2020 WL 2296946, at *5 (N.J. Super. Ct. App. Div. May 8, 2020); cf. Puche v. Wells Fargo, N.A., 256 F. Supp. 3d 540, 548–49 (D.N.J. 2017) (as to entire controversy doctrine); Delacruz v. Alfieri, 447 N.J. Super. 1, 12–13 (Law Div. Nov. 18, 2015) (same).

But it is for the Defendants to develop legal arguments along these lines, and they have not done so.

Moreover, while the factual premise of the Defendants' argument is that Fay Servicing is the servicer on the mortgage in question, it is not clear that this has been properly put before the Court.

The Plaintiff's complaint is the key source here.  See footnote 8.

The complaint alleges that Fay Servicing is a mortgage servicer and that it is involved in the relevant underlying dispute.  See Federal Complaint ¶¶ 22, 24, 48 (asserting that "Fay Servicing, LLC is a mortgage servicer," and that the present action "involves actions of Fay Servicing in two locations where Plaintiff has mortgage with Defendants"); Attachment to Federal Complaint(ECF 14-1) at 1 (asserting that "US Bank Trust National

---

[14]  A servicer handles payment processing and collection of amounts due on the loan that is secured by the mortgage.  See Christopher K. Odinet, Modernizing Mortgage Law, 100 N.C. L. Rev. 89, 116 & n.199 (2021).

9

Association and VRMTG Asset Trust have a relationship with Fay Servicing").

With a hard squint, the just-quoted language can be read to allege that Fay Servicing is the servicer on the precise mortgage at issue here.

After all, the generic "actions of Fay Servicing" might be interpreted to imply that the specific "action[]" taken by Fay Servicing was doing mortgage servicing work on the "two [referenced] locations." Federal Complaint ¶¶ 22, 24, 48.

But this is not the only reading, much less the only reasonable one.

At this stage, the Plaintiff is entitled to all reasonable inferences, see McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009), perhaps all the more so because she is pro se. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). And the quoted language is elusive --- too elusive to be taken as an allegation from the Plaintiff that Fay Servicing did the mortgage servicing work on the relevant mortgage.

*   *   *

The fourth federal-court Defendant is "US Bank Trust National Association in its individual capacity." Federal Complaint at 1 (cleaned up).

The Defendants do not address the question of whether any preclusion of "US Bank Trust National Association in its . . . capacity . . . as owner trustee for VRMTG Asset Trust Mortgagee" (the state-court plaintiff and a Defendant here) should extend to "US Bank Trust National Association in its individual capacity" (one of the federal-court Defendants).

Without an argument along those lines from the Defendants, their motion cannot be granted.

### V.    Same Transaction or Occurrence

To recap: as to "US Bank Trust National Association in its . . . capacity . . . as owner trustee for VRMTG Asset Trust Mortgagee," the first two parts of New Jersey's three-part test for claim preclusion are satisfied. Federal Complaint at 1 (cleaned up).

The final part: whether the claims in this action, the federal one, "grow out of the same transaction or occurrence as the claim[s] in the earlier one." McNeil, 177 N.J. at 395.

10

The Plaintiff has brought a large number of claims in this case. They can be hard to follow.  But construing the pro se Plaintiff's operative complaint liberally, as is required, see Erickson, 551 U.S. at 94, the Court views the Plaintiff as presenting claims for: (1) breach of contract, see Federal Complaint at 72-74, 80-81; (2) fraud and misrepresentation, see id. at 73-75 (including common law and statutory claims); (3) consumer protection-type violations (including under the Dodd-Frank Act), see id. at 75-77; (4) wrongful foreclosure, see id. at 77-78; (5) Securities Act-type violations, see id. at 79-80; (6) intentional infliction of emotional distress, see id. at 81-82; (7) violations of the Fair Housing Act, see id. at 82; (8) federal Fourteenth Amendment-type violations, see id. at 82-83, 85-86, 106; (9) federal First Amendment-type violations (including retaliation), see id. at 85-87, 90-91; (10) malicious prosecution and abuse of process, see id. at 87-88, 90-94, 104-05; (11) federal due process-type violations, see id. at 83, 88-90, 105-06; (12) obstruction of justice (including "planting of evidence" and "false information [put] in the record"), see id. at 84, 87, 94; (13) violations of the Racketeer Influenced and Corrupt Organizations Act, see id. at 83-86, 89-90, 95-96, 99, 103, 103-105; (14) defamation, see id. at 88-90, 96-97; (15) various theft-type claims, see id. at 98; (16) discrimination on various grounds, see id. at 99-100; (17) violations of federal civil rights legislation, see id. at 100-05; (18) violation of the Fair Debt Collection Practices Act, see id. at 80-81; (19) trespass-type violations, see id. at 83-84, 87-88, 97-98; (20) Fourth Amendment-type violations, see id. at 83-84, 87-88, 97-98, 105-06; and (21) violations of the federal Rehabilitation Act and Americans with Disabilities Act, see id. at 99-100.

Of these, the first 18 claims are virtually identical to claims that were raised by the Plaintiff in the foreclosure action. See Answer ("State Answer"), US Bank Tr. Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. May 31, 2023) (raising (1) breach of contract at 65, 118; (2) fraud and misrepresentation at 69-72, 75-76, 102-04, 107-09, 118; (3) consumer protection-type violations (including under the Dodd-Frank Act) at 117; (4) wrongful foreclosure at 67-68, 118; (5) Securities Act-type violations at 117-18; (6) intentional infliction of emotional distress at 118-19; (7) violations of the Fair Housing Act at 118; (8) federal Fourteenth Amendment-type violations at 77, 86; (9) federal First Amendment-type violations (including retaliation) at 40, 119; (10) malicious prosecution and abuse of process at 39-40, 86-93, 116, 119; (11) federal due process-type violations at 80-81, 83, 86; (12) obstruction of justice at 42-43, 57-58, 61, 63-67, 73, 82, 85-86, 97-98, 112-14, 119; (13) violations of the Racketeer

11

Influenced and Corrupt Organizations Act at 72, 77-78, 81-84, 86-89, 93, 95, 98-100, 114, 117-18; (14) defamation at 71, 119; (15) various theft-type claims at 69, 105, 108, 119; (16) discrimination on various grounds at 77-78, 114, 118; (17) violations of federal civil rights legislation at 119; and (18) violation of the Fair Debt Collection Practices Act at 118).

Each of these 18 claims were disposed of by the New Jersey state court. See Order Denying Defendant Ifeoma Ezekwo's Motion Filed on June 21, 2023, Granting Plaintiff's Cross-Motion for Summary Judgment, Striking Defendant's Answer and Affirmative Defenses, Deeming this Matter Uncontested Pursuant to R. 4:64-1(c), Entering Default, and Transferring this Matter to the Office of Foreclosure at 2, US Bank Tr. Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. Sept. 15, 2023) ("Defendant's Answer is hereby stricken with prejudice and all claims asserted therein are dismissed with prejudice."); see also State Foreclosure Judgment at 1 (referencing the Plaintiff's "Contesting Answer which was later stricken"); Miscellaneous Order at 1, US Bank Tr. Nat'l Ass'n v. Ezekwo, No. F-001868-23 (N.J. Super. Ct. Ch. Div. Apr. 11, 2025) (referencing "[s]ummary judgment already entered in Plaintiff's favor on 9/15/23").

And the 18 above-discussed claims clearly meet the same-transaction-or-occurrence test.[15]  See Farah v. LaSalle Bank N.A., 2020 WL 2521278, at *9 (D.N.J. May 18, 2020) ("The claims in this federal action surely could have been considered in the 2018 foreclosure action; more to the point, however, they were actually considered and rejected by the state court on summary judgment in the course its arriving at a final judgment of foreclosure.") (emphasis in original).

\* \* \*

The Plaintiff's remaining three federal-court claims are for (1) trespass, (2) violation of the Plaintiff's Fourth Amendment rights, and (3) violations of the federal Rehabilitation Act and Americans with Disabilities Act.  See Federal Complaint at 83-84, 87-88, 97-99, 100, 105-06.

---

[15]  The Plaintiff raised her claims in the state court case defensively, in her answer.  This does not alter the conclusion set out in the text.  See, e.g., 18 Wright & Miller's Federal Practice & Procedure §§ 4406, 4414 (3d ed.).

Although these claims may not have been raised by the federal-court Plaintiff in the state foreclosure action, where she was a defendant, they satisfy the same-transaction-or-occurrence test.

The reason why: under New Jersey Law, "[c]laim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." Watkins, 124 N.J. at 412; see also Culver v. Ins. Co. of N. Am., 115 N.J. 451, 463 (1989); Mortgageling Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 338 (1995).

In thinking through whether certain claims "could-have-been-litigated" in another action, key factors include: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same." Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 427 (App. Div. 2011) (cleaned up); see also Culver, 115 N.J. at 461–62 (1989).

\*   \*   \*

Against this backdrop, it is apparent that the remaining three federal-court claims could have been litigated by the Plaintiff in the state foreclosure action where she was a defendant.

As to the first claim --- trespass --- the Plaintiff argues that "[t]he actions of the Defendant fall under the definition of illegal trespass" because "[t]he Defendant is stealing the Plaintiff's property in a RICO conspiracy." Federal Complaint ¶ 679.

But the Plaintiff's core theory is that the "stealing" in question is the foreclosure on her property. And as between the current "stealing" claim and the state-court dispute, the alleged underlying wrong (foreclosure) is the same, see Bondi, 423 N.J. Super. at 427; the same basic relief (undo the foreclosure) is requested, see id.; and most of the same evidence and witnesses would be needed. See id.

Moreover, something very close to the current RICO or "stealing" claim was raised by the Plaintiff in the state foreclosure action. See, e.g., State Answer at 62 (arguing that [the Defendants] are "enacting an extensive RICO conspiracy to steal [the Plaintiff's] property for criminal gain"); id. at 30, 45,

13

54, 69, 81, 89, 103 (arguing that the alleged theft constitutes a RICO conspiracy).

\* \* \*

As to the second remaining federal-court claim --- an asserted Fourth Amendment violation --- the Plaintiff claims that "[t]he Defendant violated the Fourth Amendment in its harassment of [her]," and argues that "the Defendant cannot be allowed to steal the Plaintiff['s] . . . property, as this action would amount to an unlawful search and seizure." Federal Complaint ¶ 805.

Same as above.

The Plaintiff's unlawful seizure theory is little more than another way of saying that the state foreclosure determination was wrong. And going forward with the Fourth Amendment claim would require the same evidence and witnesses as were put forward in the state-court action.

\* \* \*

The last of the three remaining federal-court claims is for a violation of the Rehabilitation Act and the Americans with Disabilities Act.

As to these, the Plaintiff claims that "the Defendant is continually harassing the Plaintiff," as well as "spread[ing] gossip and lies about the Plaintiff" in an effort to "disrupt her" and her business. Federal Complaint ¶ 828.

But this is a barely-different repackaging of claims the Plaintiff pressed in the state court action. See, e.g., State Answer at 77 (alleging that "[t]he [federal court Defendants] and their coconspirators have criminally sought to hurt the [federal Plaintiff] . . . and have presented endless lies and fabrications to knowingly and intentionally violate the [federal Plaintiff]."); see also, e.g., id. at 27 (alleging that the Defendants "are involved in a campaign of harassment" as grounds for dismissing the case); id. at 30 ("Plaintiffs cannot prove why they are so hyped up to be sending people to harass Defendant's tenants."); id. at 41, 45, 81–84 (arguing that this harassment constitutes abuse of process, RICO conspiracy, prosecutorial misconduct, etc.).

And the relief sought based on the alleged harassment is closely similar to the relief sought by the Plaintiff in the state foreclosure action where she was a defendant. Compare Federal Complaint at 107-09 (arguing that the Defendants must "restor[e] . . . title to [the Plaintiff's] properties, "stop all

14

foreclosure proceedings," "return the Plaintiff's properties to Plaintiff and for Defendant to relinquish all claims to Plaintiff's properties," "stop all harassment of the Plaintiff," and compensate the Plaintiff monetarily), with State Answer at 122 ("The court must make the Plaintiffs permanently cease and desist from all their actions against Defendant. . . . [T]hus Defendant requests an immediate permanent injunction against the Plaintiffs to make Plaintiffs cease and desist from all their actions against the Defendant.  The Plaintiff's foreclosure action must be immediately and permanently stopped.").

Bottom line: each of the three above-referenced federal-court claims (stealing/RICO, Fourth Amendment, and ADA/RA) that were not pressed in the earlier state-court action "arise out of the same transaction or occurrence" as the state action, such that they could have been brought in that proceeding.  See McNeil, 177 N.J. at 395.[16]

---

[16] Two things here.  First, although "a claim [that] could not have been presented in the first action" because of the first court's lack of jurisdiction over the claim "will not be precluded" in a subsequent action, Watkins, 124 N.J. at 413, it is clear that the Chancery Division would have had jurisdiction over each of the three referenced federal-court claims had they been raised there in Chancery.  See Howard, 733 F. Supp. 3d at 355-56, aff'd 2024 WL 4890984 (3d Cir. Nov. 26, 2024); Brennan v. Orban, 145 N.J. 282, 293 (1996) ("[O]nce the Chancery Division asserts jurisdiction over a complaint seeking equitable relief, it has the power to dispose of ancillary legal claims."); see also Deutsche Bank Nat'l as Tr. for Morgan Stanley v. Patrick, 2018 WL 6613737, at *1 (N.J. Super. Ct. App. Div. Dec. 18, 2018) (affirming the Chancery Division's dismissal of a trespass counterclaim in a foreclosure action); Deach, LLC v. Holland, 2022 WL 17838443, at *1 (N.J. Super. Ct. App. Div. Dec. 22, 2022) (affirming the Chancery Division's denial of a foreclosure defendant's claim under the U.S. Constitution); U.S. Bank Nat'l Ass'n as Tr. of NRZ Passthrough Tr. II v. D'Ambrosia, 2022 WL 534042, at *1 (N.J. Super. Ct. App. Div. Feb. 23, 2022) (affirming the Chancery Division's denial of a foreclosure defendant's claim under a federal statute).  And second, it does not matter that the Defendants moved in federal court for dismissal of the Plaintiff's claims on preclusion grounds before the assertedly preclusive judgment was entered.  The first case to reach final judgment becomes the basis for precluding the other, regardless of when other case-related events took place.  See Moore's Federal Practice, § 131.31[2]; Restatement (2d) of Judgments, § 14, cmt. a (1982); Heulitt v.

15

## **VI. Conclusion**

As to "US Bank Trust National Association in its . . . capacity . . . as owner trustee for VRMTG Asset Trust Mortgagee," the Plaintiff's claims are precluded as they relate to the mortgage concerning the property at 54-56 Central Avenue.

Accordingly, as to that property and that Defendant, the motion to dismiss is granted with prejudice.

With respect to the remaining Defendants, the motion to dismiss as to that property is denied.

\*    \*    \*

In the interest of orderly docket management, the Court anticipates that summary judgment practice, if any, will go forward in three stages, with relevant deadlines to be set by the United States Magistrate Judge. The Court anticipates that discovery will be tightly tethered to the precise issue that needs resolution at each particular stage of the summary judgment proceedings.

In the first summary judgment stage, any motions focused on the Court's jurisdiction over claims related to the 54-56 Central Avenue mortgage may be filed.[17] Discovery may or may not be necessary before such a motion is made.

In the second summary judgment stage, a preclusion motion may be filed. Any preclusion motion that is made must be accompanied by full and complete legal briefing, including on the question of whether it matters that seemingly different parties were involved in the state court action and here. See Part IV. Some

---

W. Mich. Plumbing & Heating, Inc., 271 N.J. Super. 112, 115-16 (App. Div. Feb. 28, 1994); Smith & Wesson Brands, Inc. v. Grewal, 2022 WL 17959579, at \*5 (D.N.J. Dec. 27, 2022); cf. Sensient Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 387 (2008).

[17] It is not clear whether the same questions regarding privity and identity that must be answered to fully address claim preclusion must also be addressed as to a Rooker-Feldman argument. Compare Bass v. Butler, 116 F. App'x 376, at \*7-8 (3d Cir. 2004) (stating that "identity of the defendants is not required under Rooker-Feldman" because the doctrine "only requires identity of the party against whom the doctrine is being invoked"), with Wilson v. Quest Diagnostics Inc., 2020 WL 401814, at \*3 & n.2 (noting that Bass is not precedential).

16

highly limited discovery may be necessary for a second-stage summary judgment motion.

In the third summary judgment stage, any merits motions may be filed.

No stage two motion will be considered until any stage one motion has been resolved. And no stage three motion will be considered until any stage two motion has been resolved.

The parties shall each file a letter of no more than one page on or before October 7\. The letter shall indicate whether a stage one summary judgment motion will be filed; if yes, the United States Magistrate Judge will set a briefing schedule. The letter shall also describe the status of state court litigation as to the property at 300 Windsor Road and propose a course of action as to how claims related to that property should be handled in this Court --- whether, for example, federal-court claims related to 300 Windsor Road should be considered in the same stage-one-through-three way as the claims related to 54-56 Central Avenue, and whether any of the 300 Windsor Road claims in the Plaintiff's operative complaint might be precluded by various relevant orders that have been issued by the Chief Judge.

IT IS on this 29th day of September, 2025, **SO ORDERED.**

```
                                    _____
                                    Michael E. Farbiarz, U.S.D.J.
```